UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAYNE LOU MICHAUD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:10-cv-00252-JAW |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Jayne Lou Michaud has severe impairments consisting of late effects of cerebrovascular disease (post-stroke symptoms) and migraine headaches, but retains the functional capacity to perform past relevant work, resulting in a denial of Michaud's application for supplemental security income benefits under Title XVI of the Social Security Act. Michaud commenced this civil action to obtain judicial review of the final administrative decision, alleging errors associated with the Commissioner's residual functional capacity and past relevant work findings. I recommend that the Court vacate and remand for further proceedings.

**Standard of Review**

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**The Administrative Findings**

The Commissioner's final decision is the April 17, 2010, decision of the Appeals Council, which "found no reason" to disturb the decision of the administrative law judge. The Commissioner rests, in effect, on the April 25, 2008, decision issued by Judge Frederick Harap. Judge Harap's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, Doc. No. 7-2, R. 1, 10-19.[1])

At step 1 of the sequential evaluation process, the Judge found that Michaud has not engaged in substantial gainful activity since her November 4, 2005, application date. (R. 12, ¶ 1.) The date of alleged onset of disability is September 25, 2005, which coincides with a stroke. (R. 10.)

At step 2, the Judge found that Michaud has the following severe impairments: late effects of cerebrovascular disease (post-stroke symptoms) and migraine headaches. (R. 12, ¶ 2.) The Judge found that mild degenerative disk disease, a medicated seizure disorder, and depression were non-severe impairments. (Id.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (R. 14, ¶ 3.)

As for residual functional capacity (RFC), the Judge found that Michaud's combined impairments result in a capacity for light work, sitting for up to six hours with normal breaks, and standing or walking for up to two hours in an eight-hour workday. Additional restrictions

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 7.

pertain for certain postural and environmental conditions, as well as left-handed, repetitive manipulation. (R. 14, ¶ 4.) These restrictions relate, primarily, to left-sided weakness, post stroke (cerebral infarction). (R. 16-17.) A credibility assessment factored into the Judge's finding because the severity of the alleged symptoms could not be proved with objective medical evidence alone. (R. 15.)

At step 4, the Judge found that this degree of limitation would not preclude a return to past relevant work as a department store greeter. (R. 19, ¶ 5.) The Judge also indicated that, even if Michaud were restricted to sedentary work, "she would still be found not to be disabled by direct application of the Medical Vocational Guidelines at Rule 201.27," for purposes of a step 5 analysis. (Id.)

### Discussion of Plaintiff's Statement of Errors

Michaud complains that the Judge did not sufficiently consider the contributory impact of her migraines and her episodic lower back pain when he explained his residual functional capacity finding. (Statement of Errors at 6-7.) She also argues that the Judge impermissibly rejected the opinion of a consulting examiner, who predicted a greater degree of limitation. (Id. at 8-9.) As for past relevant work, Michaud objects that her past work as a greeter was not pursued at a level sufficient to qualify as substantial gainful activity. (Id. at 9-10.) Finally, Michaud contends that the hearing she received was somehow deficient because the Judge expressed a fair amount of skepticism about the quality of certain medical evidence. (Id. at 10-12.) At oral argument, the Commissioner essentially conceded the step 4 issue, but asked that the Court enter judgment based on Michaud's failure to assert error at step 5.

For reasons that follow, I recommend that the Administrative Law Judge's decision be vacated and that the case be remanded for further proceedings. The following discussion

addresses Michaud's challenges to the Judge's residual functional capacity findings in the hope that it will facilitate proceedings on remand, in the event that the Court should adopt the recommendation concerning step 4 error and waiver.

**A.      Residual Functional Capacity**

Preliminary to further evaluation of the claimant's alleged disability at steps 4 and 5, the Commissioner must assess the claimant's residual functional capacity (RFC).  RFC amounts to "the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The measure of a claimant's RFC is a function of "all of [the] medically determinable impairments of which [the Commissioner is] aware," including those found not sufficiently severe for purposes of steps 2 and 3.  Id. §§ 404.1545(a)(2), 416.945(a)(2).  In general, the claimant is responsible for providing the medical evidence needed to make the RFC finding, though the Commissioner has an obligation to facilitate the development of the record, such as by arranging for consultative examinations, as needed, and referring the medical records for expert review and assessment.  Id. §§ 404.1545(a)(3), 416.945(a)(3).

*1.  Migraine headaches*

Michaud argues that the Judge committed reversible error because he failed to discuss the potential limiting effect of her history of migraine headaches.  However, in regard to this particular limitation, Michaud makes no supportive reference to the medical records.  (Statement of Errors at 5.)  Michaud's 20-year history of migraine headaches was one of her impairments that the Judge found to be a severe impairment at step 2.  The Judge noted that these headaches intensify with physical exertion.  (R. 12, ¶ 2.)  The Judge discussed the impact of migraine headaches in his subsequent residual functional capacity findings.  He noted that Michaud reported more frequent headaches in 2006 on account of stress subsequent to her stroke.  The

Judge also noted that Michaud's physician, Elizabeth Quayle, M.D., added to her prescriptions "a small dose of Hydroxyzine" in August 2006 to reduce anxiety and relax muscles during this time, that Michaud's headaches returned to a decreased frequency and were less severe thereafter, and that Michaud received "reasonable benefit" from Darvocet when they arose.[2] (R. 17-18; see also Ex. 15F, R. 479; Ex. 16F, R. 482.) Based on this evidence, the Judge did not credit an allegation that there would be pain preventing work activity. (R. 18.) The Judge also restricted Michaud to light work, though he did not state that this limitation arose on account of migraine headaches. As Michaud has not identified a medical record that would suggest that her migraines are not adequately managed with medication, reversal is not called for on the basis of migraine headaches.

## 2. Back pain

Michaud advances her back impairment somewhat more thoroughly. The Judge found that the record included an MRI depicting a degree of degenerative disk disease without evidence of stenosis or nerve root compression. (R. 12.) A review of medical records indicates that lower back pain is identified only rarely in notations of Michaud's medical history. According to the Judge, Dr. Quayle diagnosed episodic lower back pain and prescribed Piroxicam. According to the Judge, Michaud reported relief with this medication.[3] (R. 12.) Against this more recent evidence, Michaud raises a 2004 evaluation for intermittent low-back pain (Ex. 12F) by K.N.M. Barth, M.D., who recommended a conservative approach involving physical therapy and exercise and a trial of epidural steroid injections. (R. 339.) The Judge discussed this record, but did not find it to be sufficient evidence of a post-onset severe impairment at step 2 given the

---

[2] Dr. Quayle believed the headaches could be prevented during the day by adjusting the timing of the Hydroxyzine pills. (R. 482.)

[3] The Judge's citation to exhibit 6F appears to be in error. However, Michaud has not suggested that the Judge's representation of Dr. Quayle's treatment lacks an evidentiary basis.

5

greatly reduced significance of this condition in the post-onset medical records and the absence of any post-onset treatment regimen. (R. 13.) Michaud says the Judge's failure to return to the issue of back pain in his residual functional capacity discussion was error. In particular, she maintains that her back pain prevents her from standing for more than five minutes without "a fair amount of pain." (Statement of Errors at 7.)

Michaud's allegation of error in this regard is not persuasive. The Judge did evaluate the reliability of Michaud's overall allegations of a subjective pain experience and found that they were only partially credible. Because the allegations of back pain feed into this analysis, it was not error for the Judge to indicate at step 2 that back pain is not a severe impairment and not return to a specific discussion of that impairment in the residual functional capacity discussion. This is particularly the case as Michaud fails to reference expert opinion describing a vocational restriction associated with back pain. In this regard, it is noteworthy that a May 2007 treating source statement of Michaud's ability to perform physical work activities fails to mention back pain as a limiting factor. (Ex. 11F.) Moreover, the Judge's residual functional capacity finding restricts Michaud to only two hours of standing per work day, including various postural and environmental limitations. Michaud fails to identify any medical evidence that her back pain would preclude this reduced level of exertion if the additional restrictions were also in place. It appears that, at most, one consulting medical examiner observed marked low back pain at the end-points of lumbosacral movements in July 2006. (Ex. 9F, R. 319.) The medical source statement supplied by this examiner, Dr. Robert Keenan, M.D., described a very limited ability to stand, but Dr. Keenan appears to have associated this limitation with Michaud's "status post cerebrovascular accident" rather than with back pain. (R. 320-21.) On this record, it was not error for the Judge to conclude that the objective evidence of back impairment did not warrant a

6

residual functional capacity restriction greater than what was otherwise demonstrated for impairment secondary to the cerebrovascular accident (CVA).

### 3. *Post CVA impairment*

Because a remand is not called for based on the Judge's treatment of the back pain and headache evidence, the remaining question is whether the Judge properly resolved the residual functional capacity question associated with post-CVA impairment. Michaud says the Judge erred by failing to give the consulting opinion of Dr. Keenan controlling weight, particularly as it is supported by the source statement provided by Michaud's treating nurse practitioner, Anne LaPlante, FNP. NP LaPlante indicated in her May 2007 source statement that she assessed significant physical functional limitations associated with left-side extremity weakness, imbalance or unsteadiness, and gait disturbance. (Ex. 11F, R. 331, 336.) She stated that Michaud required a cane to ambulate and could not stand or walk for more than 15 minutes at a time. (R. 332.) Previously, in July of 2006, Dr. Keenan provided his consulting examination and source statement (Ex. 9F), which was generally consistent with NP LaPlante's source statement. Dr. Keenan indicated a 15-minute maximum for walking "on dry, level ground and optimal conditions." (R. 320.) Dr. Keenan further indicated that standing for more than 5 minutes would cause Michaud to experience pain and stiffness in her left extremities. (Id.)

Between the Keenan examining source statement and the LaPlante treating source statement, Lawrence Johnson, MD, a consulting physician, received the medical records for purposes of fashioning a residual functional capacity assessment (Ex. 10F) in the wake of Dr. Keenan's examination. Dr. Johnson assessed that Michaud would be able to stand or walk for 2 hours total in a workday, without further qualification. (R. 324.) According to Dr. Johnson: "Dr. Keenan's limitations are not supported by the obj[ective] findings." (R. 329.) Dr. Johnson

7

recounted some of the medical findings in the records, including the lack of muscle atrophy and only mild strength reduction with strength remaining at the level of 5/5, but he did not elaborate on the basis for his rejection of Dr. Keenan's assessment about Michaud's ability to stand or walk.[4]

In his decision, the Judge thoroughly discussed the medical records related to post CVA impairment, including medical records never reviewed by Dr. Keenan or Dr. Johnson. Essentially, he found that the objective medical evidence depicted significant improvement over time and that it supported Dr. Johnson's residual functional capacity assessment. (R. 17-18.) The fact that the Judge based his finding on a review of medical evidence not considered by a consulting medical expert is a potential problem, but potentially Dr. Johnson's residual functional capacity assessment and the Judge's independent review of the medical records supply substantial evidence in support of the Judge's residual functional capacity finding. I do not offer a recommendation on that issue, however, because remand is warranted due to an erroneous step 4 finding. The Commissioner may decide to refer the file for further expert evaluation on remand, which may or may not shore up the Judge's residual functional capacity findings.

**B.      Alleged Error at Step 4 and Proposed Waiver at Step 5**

Michaud argues that her case must be remanded based on clear error at step 4. (Statement of Errors at 9.) The Commissioner does not agree that remand is called for and says that Michaud has waived objection to the Judge's alternative, step 5 finding.

At step 4 of the sequential evaluation process, the claimant bears the burden of proving that his or her RFC will not allow for performance of any "past relevant work," assuming that

---

[4]      Iver Nielson, MD, completed a physical RFC assessment for Disability Determination Services in February of 2006, slightly more than four months post CVA. (Ex. 7F.) He assessed a similar ability to stand/walk as Dr. Johnson later assessed, but found no manipulative limitations. (R. 305, 307.) In his view, the medical treatment notes reveal what appeared to be a complete recovery in relatively short order except for continued fatigue. (R. 309.)

8

any such work is available to consider. Past relevant work refers to "substantial gainful activity" performed by a claimant within the past 15 years for a long enough time for the claimant to learn to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). Substantial gainful activity is work activity involving significant physical or mental effort, of a kind that is usually performed for pay or profit. Id. The evaluation of whether past work activity was substantial and gainful typically turns on the measure of earnings derived from the activity. Id. §§ 404.1574, 416.974. The Commissioner compares the claimant's RFC with the claimant's past relevant work. If the claimant's RFC is compatible with his or her past relevant work, the claimant is found "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step 4 the burden of proof rests with the claimant to demonstrate that his or her residual functional capacity does not permit the performance of past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. §§ 404.1520(f), 416.920(f).

The Judge found that Michaud would not have any difficulty performing her past relevant work as a department store greeter, observing that she "did not have to walk or stand on uneven surfaces," bear any significant weight, manipulate objects, or move into any proscribed postures. (R. 19, ¶ 5.) An immediate concern with this finding is that there is no basis to understand why Michaud would be allowed to sit for six hours in this occupation. But more critically, the evidence of record demonstrates that Michaud's past work in this occupation did not amount to substantial gainful activity. In fact, in its preliminary development of the case, the Administration found that Michaud's work in this occupation was not substantial gainful activity. (Ex. 8E, R. 138.)

At oral argument, the Commissioner did not attempt to rehabilitate the Judge's step 4 finding. Instead, the Commissioner argued that the decision should be upheld on the basis of

9

waiver; specifically, the failure of Michaud's counsel to include a step 5 objection in the statement of errors. I do not recommend a finding of waiver on this record.

The Judge found a residual functional capacity involving various non-exertional limitations (postural, environmental, and manipulative). This would mean that application of the Guidelines at step 5 would be based on "the framework" of the Guidelines rather than a direct application to the Guidelines themselves. As indicated in other recommended decisions, such cases call for "full consideration . . . of all of the relevant facts in the case in accordance with the definitions and discussion of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor." *Medical Vocational Guidelines*, Appendix 2 to 20 C.F.R. Part 404, Subpart P, § 200.00(e)(2); see, e.g., Prescott v. SSA Comm'r, No. 1:09-cv-00522-JAW, 2010 U.S. Dist. Lexis 112997, *28-30, 2010 WL 4259001, *8 (D. Me. Oct. 21, 2010) (Mag. J. Rec. Dec.). Had the Commissioner articulated a solid basis for a framework finding at oral argument, I would be inclined to offer a recommendation affirming the step 5 finding. That did not happen in this case as it did in Prescott.

Waiver is more appropriate when plaintiff's counsel interjects new allegations of error at oral argument concerning issues for which the plaintiff bore the burden of proof rather than the Commissioner. The burden at step 5 falls to the Commissioner and, in the absence of a reasonable explanation, affirming a one-sentence alternative finding based on waiver is unduly harsh.[5]

---

[5] The Commissioner might also request leave to brief such issues in future cases. The Court is reluctant to remand for further proceedings when it is clear that such proceedings will amount to an empty gesture, but nothing stated at oral argument indicated that this was actually a strong case for application of the Guidelines at step 5. There is obviously a benefit to developing this line of inquiry, however it comes out, but the Commissioner has the burden of articulating why the regulations direct such an outcome.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court VACATE the Commissioner's final decision and remand for further proceedings.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 26, 2011